# NEW YORK GRAPE SUGAR Co. *v.* AMERICAN GRAPE SUGAR Co. and others.

*(Circuit Court, N. D. New York.  March 3, 1882.)*

**1. PATENTS—WANT OF NOVELTY.**

The employment of sheet metal as a lining for the bottom of a vessel to contain liquids involves no invention.

**2. SAME—PRELIMINARY INJUNCTION.**

Where the questions as to the complainant's rights under his patent are doubtful, they will not be entertained on a motion for a preliminary injunction.

**3. SAME—WHEN INJUNCTION GRANTED.**

When the validity of the patent is not assailed, and the proof of infringement is clear, the court will grant a preliminary injunction.

**4. PROVISIONAL INJUNCTION.**

Where the defendants are entirely responsible, and complainant can be adequately compensated, irreparable damage is an indispensable element in an application for a provisional injunction.

*Dickerson & Dickerson,* for complainant.  *Roscoe Conkling,* of counsel.

*Bowen, Rogers & Locke,* for defendants.  *Geo. Harding,* of counsel.

WALLACE, D. J.  The complainant moves for a preliminary injunction to restrain the defendants from infringing four patents owned by complainant relating to improvements in the apparatus for manufacturing starch.  Of these patents the first was issued January 14, 1868, to John A. Owens, and was reissued to Thomas A. Jebb and William T. Jebb, May 31, 1881, for a combination of an agitator and vibrating screen or sieve; the second was issued May 26, 1868, to John A. Owens, for an improvement in starch trays, which consists in forming the bottoms of sheet metal; the third was issued September 8, 1868, to J. J. Gilbert, as assignee of Colgate Gilbert, for a bolting sieve vibrated, supported, and fed as described, and the constituent parts thereof; and the fourth was issued to Colgate Gilbert, April 15, 1873, for an adjustable support to a starch separator.  Except as to the second patent, the defendants have entirely failed to impugn the right of the complainant to an injunction, if this were a final hearing instead of a motion for a preliminary injunction.

As to the second patent, sufficient appears to raise doubts as to the patentable novelty of the improvement described.  It would seem that the employment of sheet metal as a lining for the bottom of a starch tray involves no invention.  The bottom had been made of wood, and, undoubtedly, when lined with lead or copper or galvan-

ized iron, would be more durable and more easily cleaned. But it is within common knowledge that such linings had been used analogously in many other vessels made to contain liquids, because of these advantages. Such a lining had also been employed, as described in the Belgian patent of Heidt, for forming the bottom of a trough or channel used for the deposition of starch, in the place of the tray used by Owen. Inasmuch as the court will not decide doubtful questions as to complainant's right upon a motion for a preliminary injunction, the motion fails as to this patent. The other patents are not seriously assailed, and it is not denied that the defendants have appropriated the improvements covered by them, and are now employing them in their glucose factories.

An attempt has been made to present the *defence* of abandonment. It is not claimed that there had been any abandonment before the letters patent were obtained, and the facts disclosed signally fail to show any intention on the part of the owners of the patents to abandon or dedicate their rights to the public subsequently. It is not shown that the owners of the patents prior to the Jebbs, who acquired title in the spring of 1881, had any knowledge that the defendants or others were using the patented improvements. It would seem to be fairly inferable, although not distinctly shown, that the Gilberts, who owned all the patents prior to the purchase by the Jebbs, intended to preclude the public from participation in the use of the patents, and to use them exclusively in their own starch factories. The improvements were surreptitiously appropriated from the Gilberts by Fox & Co., from whom they were also surreptitiously acquired by the Buffalo Grape Sugar Company and these defendants. The history of the process patent throws no light upon that of the apparatus patents.

It is insisted that the complainant has not shown such an exclusive enjoyment by the owners of the patents, and recognition by the public of their rights, as to authorize a preliminary injunction, in the absence of any adjudication upon the patent. If, by the policy of the owners, information as to the practical working of the inventions was withheld from the public, of course there could not be such a recognition and acquiescence as in many of the cases has been held to be necessary. Formerly the rule undoubtedly was that a preliminary injunction would not be granted unless the right secured by the patent was fortified by evidence of an exclusive or recognized enjoyment of the right, or by former adjudications sustaining it. In more recent practice this rule has been relaxed when the validity of the pat-

ent is not assailed, and the proof of infringement is clear. *North* v. *Kershaw*, 4 Blatchf. 70; *The Burleigh Rock Drill Co.* v. *Loddell*, 1 Ban. & A. 625; *Steam Gauge & Lantern Co.* v. *Miller*, 8 FED. REP. 314. It would seem that the presumption arising from the grant, especially when not of recent date, ought to suffice as against a defendant who has appropriated an invention secured to another by letters patent which are not attacked. It is not necessary, however, to pass definitely upon the point in the present case, because the injunction must be denied upon another ground.

The complainant has recently purchased the patents and proposes to use them, not by manufacturing under them, but by selling licenses to others. It is expressly alleged in the moving affidavits that the complainant does not desire to enjoin the defendants, provided they will accept a license and pay damages at the same rate as other licensees. It does not appear that complainant has as yet established any license fee for the use of the apparatus patents independently of the process patent. The sum which defendants should pay cannot, therefore, well be determined except by an accounting for profits; and, as they are entirely responsible, when this is had the complainant can be adequately compensated. Irreparable damage is an indispensable element upon an application for a provisional injunction. *Sanders* v. *Logan*, 2 Fish. 167; *Morris Manuf'g Co.* v. *Lowell*, 3 Fish. 67; *Pullman* v. *B. & O. R. Co.* 5 FED. REP. 72.

On the other hand, the defendants have gradually created and developed an extensive market for glucose and grape sugar; so large that if their works were stopped the demand could not be well supplied, and serious inconvenience would result. They have not only invested a large capital in their manufacturing business, but they employ a great number of workmen, many of whom would be temporarily cut adrift if an injunction were granted. It is difficult to see how the defendants could remove the patented apparatus without substantially dismantling and reorganizing their works. Under such circumstances the equitable considerations which appeal to the discretion of the court, and within well-recognized rules should lead to the refusal of a preliminary injunction, cannot be ignored.

If the complainant has any reason to doubt the pecuniary ability of the defendants now, or at any future time, to pay any decree that may be obtained in suit, it may apply for a further order requiring the defendants to enter into a bond with sureties.