CROWE v. OSCAR BARNETT FOUNDRY CO.

(District Court, D. New Jersey. May 23, 1913.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—GRATE-BAR.

The Crowe patent, No. 668,495, claims 1 and 2, for a grate-bar for use in furnaces, must be narrowly construed in view of the prior art and the proceedings in the Patent Office and limited to the specific form of hooks shown and described for attaching the chain of a traveling grate. As so construed, *held* not infringed by the grate-bar of the Clark patent, No. 972,751.

2. PATENTS (§ 112*)—INFRINGEMENT—EVIDENCE.

The granting of a patent for a device similar to one covered by a prior patent is prima facie evidence that there is a difference between the two.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. § 112.*]

In Equity. Suit by Paul L. Crowe against the Oscar Barnett Foundry Company. On final hearing. Decree for defendant.

W. P. Preble, of New York City, for complainant.
Russell M. Everett, of Newark, N. J., for defendant.

CROSS, District Judge. [1] On February 19, 1901, Paul L. Crowe, the complainant, obtained letters patent No. 668,495 for a grate and bar therefor. The patent has six claims, the first two of which, by his bill of complaint herein, he alleges are valid and have been infringed by the defendant, and he prays for the relief usually granted in equity in such cases. The claims in suit are as follows:

"1. A grate-bar comprising a body portion having a strengthening web beneath it, a fire bearing surface comprising a series of teeth formed by vertical corrugations upon the opposite sides of the bars, and depending single hooks near both ends of the grate-bar, said hooks having chain engaging portions extending longitudinally of the bar, and adapted to engage the links of ordinary chains for forming a traveling grate.

"2. A grate-bar for traveling grates comprising a body portion, laterally extending fingers forming a fire bearing surface, a depending projection near each end of the bar upon the under side thereof terminating respectively in a laterally projecting finger forming chain engaging hooks, the hooks at both ends extending in one direction, substantially as described."

The inventor, speaking of his invention, says that it relates to improvements in furnace grate-bars, but more especially to those which are adapted for use in traveling grates; that it is simple and inexpensive in construction and well "suited for use in connection with a chain or cable of substantially the design of a common anchor or logging chain." Complainant's counsel, by his statements with reference to the scope of complainant's patent, at the hearing and argument, seemed to regard the claims in suit as combination claims for a grate-bar and a cable or logging chain, component parts of a traveling grate, but this view is manifestly erroneous; the claims are not combination claims and do not directly relate to a logging or a cable chain. They have merely to do with a grate-bar, which, however, it is incidentally al-

leged, has peculiar facilities by means of certain hooks, for attachment to a logging or cable chain.

An examination of the file wrapper and contents which are in evidence, in connection with the prior art, shows that the claims in controversy depend for their validity for the most part upon the form and location of the hooks or means of attachment of the grate-bars to the chain, and that the patentee by the limitations imposed upon and accepted by him, in his endeavor to secure his patent, has estopped himself from asking other than a narrow construction of them; consequently, he is not entitled to any considerable range of equivalents.

Claims 1 and 2 as originally introduced read as follows:

"1. A grate-bar comprising a body portion having a strengthening web beneath it, a fire bearing surface comprising a series of teeth formed by vertical corrugations upon the opposite sides of the bars, and a depending single hook near each end of the grate-bar for engaging the chains of the traveling grate, substantially as described.

"2. A grate-bar for traveling grates comprising a body portion, laterally extending fingers forming a fire bearing surface, a depending projection near each end of the bar upon the under side thereof terminating respectively in a laterally projecting finger, forming chain engaging hooks, substantially as described."

The examiner rejected both of them in view of the following references: Tibbitts, No. 561,627 (1896); Playford, No. 570,268 (1896); and Milburn (British), No. 8,111 (1884)—all for chain grates. The patentee's solicitors sought to retain claim 1 by argument of the following character: After calling attention to the fact that the claim called for "a depending single hook near *each end* of the grate-bar," they claimed that Tibbitts and the British patent of Milburn showed hooks at *one end* only of the grate-bar, and that Playford showed no hook at all. The examiner's objection to claim 2 was acquiesced in by the applicant's solicitors, and they accordingly amended it by adding the following words in the connection in which they appear in claim 2 in suit, "the hooks at both ends extending in one direction," and as thus amended that claim was allowed. The argument of complainant's solicitors, however, as to claim 1, did not meet and answer the objections previously urged against its allowance by the examiner; hence it was again rejected. The patentee again yielded, canceled the claim, and inserted in lieu thereof the following:

"1. A grate-bar comprising a body portion having a strengthening web beneath it, a fire bearing surface comprising a series of teeth formed by vertical corrugations upon the opposite sides of the bars, and depending single hooks near both ends of the grate-bar, adapted to engage and connect the bar with the chains of a traveling grate."

His solicitors thereupon sought to obtain the allowance of the claim thus amended, and to distinguish it from the examiner's references by renewing their argument to the effect that Tibbitts only showed a hook at one end of his grate-bar, while applicant's claim called for two, one at each end; that Playford used no hook; and that Milburn's British patent employed hooks at one end of the grate-bar only, which, moreover, were not used for connecting the bars with chains. The examiner, however, finally rejected the claim, holding that it merely

duplicated the fastening hook of Tibbitts, which duplication did not involve invention. The applicant then appealed to the Examiners in Chief, who, while the appeal was pending before them, permitted the applicant to substitute claim 1 as it now appears, in lieu of the claim appealed from. They, however, practically upheld the examiner, since they did not allow the claim appealed from and allowed the substituted claim only for the reason, as urged by the appellant:

"That owing to the form of hook which he used and their location near the end of the grate, his grate-bar is more easily removed and replaced than either of the grate-bars of the references."

And the claim as allowed, it should be noted, required the hooks to extend "longitudinally of the bar."

From the foregoing history of the patent, it is apparent, as already stated, that both of the claims in issue, so far from being broad claims, are claims of narrow scope which must be strictly construed, to be upheld. Claim 2 must have hooks "at both ends of the grate-bar, extending in one direction"; and it might as well be said here, as later, that the defendant's construction does not infringe this, the vital feature of the claim, because it does not have hooks at both ends, but rather a hook at one end and a bolt at the other. While the language of claim 1 as allowed is perhaps somewhat broader on its face than that of claim 2, it must nevertheless, in view of its history, be restricted to the specific form of hooks shown and described in the specification and drawings of the patent, for the reason that it was because of their form and position, as appears by the foregoing quotation from the findings of the Examiners in Chief on appeal, that the claim was finally, but with considerable hesitancy, allowed.

The file wrapper and contents demonstrate that it was not intended by claims 1 and 2 to give Crowe, the patentee, anything more than a right to use hooks of the form which he had shown and described; that is to say, hooks with arms extending longitudinally of the grate-bar, as called for by claim 1, or hooks at both ends extending in one direction, as called for by claim 2. Unquestionably their facility of adjustment to the chain procured the allowance of claim 1 by the Examiners in Chief. Tibbitts had already used a hook at one end of the grate-bar which performed the same function at one end that Crowe's did, and the examiner was clearly right in saying, in substance, that the placing of a hook at both ends of the grate-bar was merely a duplication and did not show novelty or invention. Furthermore, an examination of the record will show that there was no novelty in the use of anchor or cable or logging chains upon which to attach and advance the grate-bar. In 1887, a British patent No. 867 was issued to one Wrigley, figures 3 and 5 of which show, as plainly as drawings can, grate-bars attached to an anchor or logging chain, forming a traveling grate. He manifestly had in mind grate-bars and chains and traveling grates, of the same general character as those referred to in the patent in suit. In his provisional specification, Wrigley says:

"Figures 3, 4, 5, and 6 are diagrams showing how the bars may be connected with *ordinary chains* so as to be moved in the upper and lower grooves by passing the chain over *pulleys* at each end of the furnace, and which may be applied as a modification of the propelling apparatus shown in figure 1."

And at the close of his specification, he adds:

"Having now described the nature of the said invention, together with the method of carrying the same into practical effect, I wish it to be distinctly understood that I claim the employment and use of transverse fire-bars connected together as an endless chain in furnaces or in combination with the apparatus for effecting their progression as hereinabove described, set forth, and fully illustrated in the drawings of the patent."

With this disclosure made nearly a generation before Crowe's invention of the patent in suit, it is difficult to find novelty or invention in the claims in suit, unless it be found in the specific form of hook attachment already alluded to. Certainly there was no novelty in making a chain grate of transverse fire-bars connected at their opposite ends to cable, anchor, or logging chains; and, as counsel for the defendant pertinently remarks, it is a remarkable coincidence that claim 2 of the patent in suit uses the term "ordinary chains" in the same sense and connection that Wrigley used it in his patent 30 years before. It seems unnecessary to prolong this discussion, although British patent No. 2,798 to Welch (1877), and United States patent No. 531,964 to Perkins, might profitably be considered in connection with those already mentioned.

Defendant is not using, as has already been intimated, the hooks of claims 1 and 2 in suit, but is closely following the attachment and device set forth and described in a patent issued to one Clark, No. 972,-751 (1910). This patent was obtained without reference to the patent in suit, and is really little more than a modification of Tibbitts. Tibbitts' bar is fastened to the chain at one end by a hook; the bar is then drawn over and bolted to the chain at its other end. Defendant's device is operated quite similarly; its bar is hooked at one end in a vertical link in the chain, while the opposite end is dropped onto the other chain and fastened thereto by passing upward through a horizontal link, a T-headed bolt into a socket in the bar, after which a cotter pin is passed through said socket and the end of the bolt therein. It manifestly is not fastened to the bar by hooks such as are called for by the claims of the patent in suit. Furthermore, it is a serious question whether complainant's own device, as manufactured and sold by it, comes within claims 1 and 2 of his patent. Certainly, the complainant seems to have departed widely from its teachings, and it is possible that in this departure the reason may be found why the complainant has concluded that the defendant is infringing his patent. However that may be, I am satisfied that the defendant does not infringe it. There is no testimony to show that it does, while there is abundant testimony to show that it does not.

[2] Moreover, this conclusion is supported by the fact that the defendant is using a patented device which is prima facie evidence that it differs from that of the patent in suit. Gillette v. Durham Duplex Razor Co. (D. C.) 197 Fed. 574.

The bill of complaint will be dismissed, with costs, on the ground of noninfringement of claims 1 and 2 in suit.